IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.

JOHN NORMAN SIMS
GEORGE GUYTON CANNADY
  and
RONALD BENTON POWERS

                       /

SEALED INDICTMENT

3:13 cr 77 LAC

THE GRAND JURY CHARGES:

## COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment:

1.    The United States Air Force (USAF) was a military service of the United States and an agency of the United States Department of Defense.  The USAF contracted with various vendors, companies, and entities to perform services and provide materials to the USAF to support a USAF activity.

2.    The USAF activity was based in the Northern District of Florida.

3.      The process through which the federal government of the United States acquires goods and services through the public sector is governed by the Federal Acquisition Regulation (FAR). The FAR is codified in Title 48 of the United States Code of Federal Regulations, Section 1.000, *et. seq.* The purpose of the FAR is to provide "uniform policies and procedures for acquisition" (48 C.F.R. § 1.101) and to ensure that the business of acquisitions by the United States Government (USG) is conducted "in a manner above reproach and, except as authorized by statute or regulation, with complete impartiality and with preferential treatment for none" (48 C.F.R. § 3.101). The FAR consists of sets of regulations to govern the acquisition process that consists of three main phases: (1) USG need recognition and acquisition planning, (2) contract formation, and (3) contract administration. The FAR and its agency supplements, in this case, the Defense Federal Acquisition Regulation Supplement (DFARS), are recognized as having "the force and effect of law."

4.      The FAR and DFARS regulate the relationship between USG personnel, or persons acting on behalf of the USG, and contractors. The FAR and DFARS also regulate the release of "public" information related to a potential government contract: what can be released, who can release it, and when it can be released. In addition to the policies and procedures established in the FAR, government employees and contractors doing business with the government remain subject to applicable law as written in the United States Code.

5.      **JOHN NORMAN SIMS** was a retired USAF officer and a contractor with the USAF between on or about April 1, 2004, and on or about February 2, 2007. He

2

was a civilian employee of the USAF between on or about February 2, 2007, and April 30, 2010. **JOHN NORMAN SIMS** was suspended from his civilian employee position with the USAF on July 14, 2009, and resigned his position with the USAF on or about April 30, 2010.

6.       **GEORGE GUYTON CANNADY** was the owner of a company referred to throughout this Indictment as "Company A." Company A contracted with the USAF to provide services to a USAF activity.

7.       **RONALD BENTON POWERS** was the owner of various companies that provided goods and items to support a USAF activity.

## B. THE CHARGE

Between in or about February 2004 and in or about June 2010, in the Northern District of Florida and elsewhere, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons to defraud the United States in any manner and for any purpose, and to commit an offense against the United States, namely:

1.       to directly and indirectly, corruptly give, offer, and promise a thing of value to a public official with intent to influence a public official to commit, aid in committing, and to collude in, and to allow a fraud, and to make opportunity for the

3

commission of a fraud on the United States, in violation of Title 18, United States Code, Section 201(b)(1)(B);

2.      being a public official, to directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally and for another person and entity being influenced to commit and aid in committing, and to collude in, and to allow a fraud, and to make opportunity for the commission of a fraud on the United States, in violation of Title 18, United States Code, Section 201(b)(2)(B);

3.      to knowingly and willfully embezzle, steal, and convert to their own use and the use of another, money of the United States greater than one thousand dollars ($1,000.00), in violation of Title 18, United States Code, Section 641;

4.      to knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract, in violation of Title 41, United States Code, Section 423;

5.      to knowingly and willfully devise and intend to devise a scheme to defraud and deprive the citizens of the United States and the USAF of their right to the honest and faithful services of a public official, through bribery and kickbacks, and the concealment of material information, and for the purpose of executing such scheme, and attempting to do so, did cause mail matter to be sent and delivered by the United States Postal Service

4

and by a private and commercial interstate carrier, in violation of Title 18, United States Code, Sections 1341 and 1346; and

6.      to knowingly and willfully, within the jurisdiction of the executive branch of the Government of the United States, make a materially false, fictitious, and fraudulent statement and representation, in violation of Title 18, United States Code, Section 1001.

## C. MANNER AND MEANS OF CONSPIRACY

The manner and means by which the conspiracy was carried out included the following:

1.      It was part of the conspiracy that conspirators would agree to obtain contracts from the USAF for a USAF activity by using the insider knowledge, expertise, and access of **JOHN NORMAN SIMS,** with respect to military operation and knowledge of USAF activity and necessary future contracts as a contractor with, and later, an employee of, the USAF; the expertise and knowledge of **GEORGE GUYTON CANNADY** as a contractor to support USAF activity; and the expertise and ability of **RONALD BENTON POWERS** to locate, lease, and provide equipment and items to support the USAF activity.

2.      It was further part of the conspiracy that **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** would become partners in Company A to obtain and implement contracts with the USAF relating to a USAF activity, and agree to share all monies received from the USAF contracts with Company A.

5

3.  It was further part of the conspiracy that **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** would dissolve their partnership in Company A due to concerns of having the name of **SIMS** directly linked to a company obtaining contracts from the USAF while **SIMS** was working for the USAF on a USAF activity. **GEORGE GUYTON CANNADY** then assumed sole control and ownership of Company A.

4.  It was further part of the conspiracy that **JOHN NORMAN SIMS** and **GEORGE GUYTON CANNADY** would create what is referred to in this Indictment as Company B, a holding company and sole shareholder of Company A, to take all the monies and profits earned by Company A from contracts with the USAF, and agree to share all contractor fee monies and profits derived from USAF contracts equally. Corporate documents for Company B were filed in the state of Nevada to avoid detection of the existence of the company and to conceal it from the USAF.

5.  It was further part of the conspiracy that **GEORGE GUYTON CANNADY** would deposit all contractor fees and other monies earned through Company A contracts with the USAF into bank accounts of Company A, would transfer contractor fees and other monies into his personal account, and then issue checks from his personal account for approximately half of the contractor fees, profits, and other monies obtained to **JOHN NORMAN SIMS.** This procedure was designed to conceal the division of contract monies received by Company A among the conspirators in case of an audit of the contracts with Company A conducted by the USAF.

6

6. It was further part of the conspiracy that **JOHN NORMAN SIMS** would provide to **GEORGE GUYTON CANNADY** acquisition requirements and pricing data for future contracts for USAF activity, and **GEORGE GUYTON CANNADY** would provide this information to **RONALD BENTON POWERS** so he could locate specific items or equipment for future contracts for the USAF activity.

7. It was further part of the conspiracy that after **RONALD BENTON POWERS** would receive acquisition requirements and pricing data for future contracts for USAF activity from the conspirators, he would locate the equipment or items and contract with the USAF to support the USAF activity. Upon receiving the contract monies from the USAF, **RONALD BENTON POWERS** would share some of the contract monies with **GEORGE GUYTON CANNADY,** who would, in turn, share some of the monies with **JOHN NORMAN SIMS**.

8. It was further part of the conspiracy that **JOHN NORMAN SIMS** and **GEORGE GUYTON CANNADY** would shape the requirements for a contract for USAF activity to match equipment or items that **RONALD BENTON POWERS** already possessed or could obtain.

9. It was further part of the conspiracy that Company A, as part of specific USAF contracts, would receive USAF monies to support the USAF activity that would be spent for services by various businesses or entities. However, when Company A would receive rebate checks back from the businesses or entities relating to the services paid for by USAF money, the monies were not returned to the USAF, but, instead, kept by

7

**GEORGE GUYTON CANNADY,** and the monies were divided with **JOHN NORMAN SIMS.**

10. It was further part of the conspiracy that when the USAF learned that **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** had at some point been joint shareholders in Company A, the defendants concocted a false story or account of their interest in Company A with the intent to deceive the USAF and conceal their participation in a scheme to defraud the United States by obtaining specific contracts from the USAF for USAF activity and the sharing of monies from the contracts among the defendants.

11. It was further part of the conspiracy that **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** would make material false statements to agents of the United States Air Force Office of Special Investigations (AFOSI) concerning their relationship, their obtaining USAF contracts, and the claimed lack of financial interest among the defendants in the USAF contracts.

12. It was further part of the conspiracy that **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** would submit false and fraudulent statements, representations, and affidavits to the USAF when a debarment action, seeking to prohibit the defendants from conducting business with the USAF in the future, was initiated by the USAF.

13. It was further part of the conspiracy that **JOHN NORMAN SIMS** and **GEORGE GUYTON CANNADY** would possess classified information and documents relating to the USAF activity at their residences after they had signed documents with the

8

USAF and falsely certified that they had not retained any classified material and had surrendered all classified material to the USAF upon their termination from access to the USAF activity.

14.     It was further part of the conspiracy that **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** would fraudulently obtain contracts with the USAF to provide services and items to the USAF activity totaling approximately $5.4 million, and concealed from the USAF that they had agreed to work with **JOHN NORMAN SIMS** to obtain USAF contracts and would share monies from the contracts.

15.     It was further part of the conspiracy that **JOHN NORMAN SIMS**, while a USAF contractor and employee, would obtain bribes and kickbacks totaling approximately $200,000.00 related to contracts for the USAF activity with the USAF from **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS**.

16.     It was further part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal, and cause to be hidden and concealed, the purpose of the conspiracy and the acts committed in furtherance of the conspiracy.

### D.  OVERT ACTS OF THE CONSPIRACY

In furtherance of this conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed by the conspirators in the Northern District of Florida and elsewhere:

1.     In or about the spring or summer of 2004, **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** met and

9

discussed becoming partners in providing services for a USAF activity, and determined the roles of each conspirator: **JOHN NORMAN SIMS** being the USAF insider to steer USAF contracts to the conspirators, **GEORGE GUYTON CANNADY** operating and running the company that would contract with the USAF, and **RONALD BENTON POWERS** providing specific equipment and items to support the USAF activity.

2.     Between on or about February 26, 2004, and on or about October 14, 2004, a support organization brief was formulated by **JOHN NORMAN SIMS** and **GEORGE GUYTON CANNADY** that listed all three defendants as partners in providing support services for a USAF activity.

3.     On or about November 11, 2004, **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** signed partnership documents for Company A, and, on or about December 1, 2004, **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS** signed a shareholder agreement for Company A.

4.     In early 2005, **JOHN NORMAN SIMS** authored a USAF contract requirements document outlining to USAF contracting officials the requirements for contracts for USAF activity that would be awarded by the USAF to include Company A.

5.     In or about February 2005, the Company A shares agreement was terminated by **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY,** and **RONALD BENTON POWERS.**

6.     Between in or about August 2005 and November 2005, **JOHN NORMAN SIMS** and **GEORGE GUYTON CANNADY** created Company B with the filing of corporate documents in the state of Nevada, and a partnership agreement entered into by them.

7.     On or about December 19, 2005, **GEORGE GUYTON CANNADY** paid **JOHN NORMAN SIMS** $2,000.00 from USAF contract monies that **GEORGE GUYTON CANNADY** and Company A had received related to a USAF activity.

8.     On or about May 1, 2006, **JOHN NORMAN SIMS** and **GEORGE GUYTON CANNADY** signed an Operating Agreement between Company A and Company B, which provided that Company B would possess the sole ownership in all aspects of the operation of Company A.

9.     Between on or about December 19, 2005, and on or about April 23, 2009, 35 payments were made to **JOHN NORMAN SIMS** by **GEORGE GUYTON CANNADY** from USAF contract monies that Company A and **GEORGE GUYTON CANNADY** obtained related to a USAF activity.

10.     Between in or about October 2005 and January 2007, **GEORGE GUYTON CANNADY** paid for a lease for services for a USAF activity with USAF funds, and when there was a reduced cost for the lease, **GEORGE GUYTON CANNADY** did not disclose the reduced cost to the USAF and kept $33,375.00 in USAF monies.

11

11.     On or about September 1, 2006, **GEORGE GUYTON CANNADY** received $50,000.00 as a rebate on a lease for services for a USAF activity and provided **JOHN NORMAN SIMS** a portion of those monies, which funds belonged to the USAF.

12.     On or about April 18, 2007, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

13.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #12 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY**.

14.     On or about May 4, 2007, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

15.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #14 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY**.

16.     On or about May 10, 2007, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

17.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #16 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY**.

18.     On or about May 7, 2007, **GEORGE GUYTON CANNADY** wrongfully accepted $50,000.00 as a rebate on a lease for services for a USAF activity and provided **JOHN NORMAN SIMS** $20,000.00 of those monies, which funds belonged to the USAF.

19.     On or about June 18, 2007, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

20.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #19 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY.**

21.     Between on or about October 31, 2007, and on or about October 1, 2008, **RONALD BENTON POWERS** and **GEORGE GUYTON CANNADY** obtained more than $900,000.00 in USAF monies for providing a service to a USAF activity through Company C created on September 27, 2007, and based upon the future acquisition information and pricing data provided to them by **JOHN NORMAN SIMS**, as referenced in Overt Acts #12, #14, and #19 above.

22.     On or about August 30, 2007, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

23.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #22 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY.**

24.     In or about September 2007, **RONALD BENTON POWERS** obtained a USAF contract to provide services or equipment for a USAF activity relating to the information described in Overt Act #22 above, and, on or about October 9, 2007, paid $36,000.00 to **GEORGE GUYTON CANNADY** in relation to obtaining that USAF contract.

25.     On or about October 10, 2007, **GEORGE GUYTON CANNADY** paid $16,000.00 to **JOHN NORMAN SIMS** relating to **RONALD BENTON POWERS** obtaining the recent USAF contract.

26.     On or about February 5, 2008, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

27.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #26 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY**.

28.     On or about March 30, 2008, **JOHN NORMAN SIMS** sent an email to **GEORGE GUYTON CANNADY** that related to future acquisition requirements and pricing data for a USAF contract.

29.     The future acquisition requirements and pricing data for the USAF contract described in Overt Act #28 above was provided to **RONALD BENTON POWERS** by **GEORGE GUYTON CANNADY**.

30.     On or about May 2, 2008, **GEORGE GUYTON CANNADY** wrongfully accepted $50,000.00 as a rebate on a lease for services for a USAF activity and provided

14

**JOHN NORMAN SIMS** $25,000.00 of those monies, which funds belonged to the USAF.

31. On or about May 18, 2009, **GEORGE GUYTON CANNADY** wrongfully accepted $50,000.00 as a rebate on a lease for services for a USAF activity, which funds belonged to the USAF.

32. On or about July 13, 2009, **JOHN NORMAN SIMS** made false statements to AFOSI agents concerning not having any financial interest with **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** in USAF contracts that were obtained by them for a USAF activity, and that **JOHN NORMAN SIMS** was not affiliated with, or a silent partner in, any company.

33. On or about July 30, 2009, **GEORGE GUYTON CANNADY** made false statements to AFOSI agents in which he claimed that he never made any money from the contract information he received from **JOHN NORMAN SIMS** and forwarded to **RONALD BENTON POWERS** for a USAF activity.

34. On or about January 20, 2010, **RONALD BENTON POWERS** made false statements to AFOSI agents that Company A was never going to be operated for profit and that he had no specific information why **JOHN NORMAN SIMS** owned shares in Company A.

35. Between on or about March 26, 2010, and on or about April 26, 2010, **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY**, and **RONALD BENTON POWERS** made similar false written statements provided to agents of the USAF concerning the existence and purpose of Company A.

15

36. On or about May 14, 2010, **GEORGE GUYTON CANNADY** wrongfully accepted $50,000.00 as a rebate on a lease for services for a USAF activity, which funds belonged to the USAF.

37. In or about June 2010, **JOHN NORMAN SIMS, GEORGE GUYTON CANNADY**, and **RONALD BENTON POWERS** made false statements to the USAF concerning the debarment of the three defendants by the USAF.

38. In or about June 2010, **JOHN NORMAN SIMS**, in support of his response against the USAF proposed debarment of him, prepared multiple misleading affidavits, caused a number of people to sign the affidavits, and submitted the misleading affidavits to the USAF.

All in violation of Title 18, United States Code, Sections 371 and 1349.

### COUNT TWO

Between in or about December 2005 and in or about May 2009, in the Northern District of Florida and elsewhere, the defendants,

### GEORGE GUYTON CANNADY
### and
### RONALD BENTON POWERS,

did directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, namely, a contractor and employee of the USAF, with intent to influence a public official to commit, aid in committing, and to collude in, and to allow a fraud, and to make opportunity for the commission of a fraud on the United States, in that the defendants provided monies obtained from USAF contracts referred to for the purposes of this Count

16

as contracts #1-6, in return for the public official being influenced to commit, aid in committing, and to collude in, and to allow a fraud to be committed on the United States.

In violation of Title 18, United States Code, Sections 201(b)(1)(B) and 2.

### COUNT THREE

Between in or about December 2005 and in or about May 2009, in the Northern District of Florida and elsewhere, the defendant,

### JOHN NORMAN SIMS,

a public official, that is, a contractor and employee of the USAF, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive a thing of value personally, in return for being influenced to commit, aid in committing, and to collude in, and to allow a fraud, and to make opportunity for the commission of a fraud on the United States, in that the defendant accepted and received monies obtained by contractors from USAF contracts referred to for the purposes of this Count as contracts #1-6, as a result of the defendant being influenced to commit, aid in committing, and to collude in, and to allow a fraud to be committed on the United States.

In violation of Title 18, United States Code, Section 201(b)(2)(B).

### COUNT FOUR

Between on or about August 30, 2007, and on or about October 10, 2007, in the Northern District of Florida and elsewhere, the defendants,

### GEORGE GUYTON CANNADY
### and
### RONALD BENTON POWERS,

17

did directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, namely, a contractor and employee of the USAF, with intent to influence a public official to commit, aid in committing, and to collude in, and to allow a fraud, and to make opportunity for the commission of a fraud on the United States, in that the defendants provided monies obtained from a USAF contract referred to for the purposes of this Count as contract #7, in return for the public official being influenced to commit, aid in committing, and to collude in, and to allow a fraud to be committed on the United States.

In violation of Title 18, United States Code, Sections 201(b)(1)(B) and 2.

## COUNT FIVE

Between in or about August 2007 and on or about October 10, 2007, in the Northern District of Florida and elsewhere, the defendant,

## JOHN NORMAN SIMS,

a public official, that is, a contractor and employee of the USAF, did directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive a thing of value personally, in return for being influenced to commit, aid in committing, and to collude in, and to allow a fraud, and to make opportunity for the commission of a fraud on the United States, in that the defendant accepted and received monies obtained by contractors from a USAF contract referred to for the purposes of this Count as contract #7, as a result of the defendant being influenced to commit, aid in committing, and to collude in, and to allow a fraud to be committed on the United States.

In violation of Title 18, United States Code, Section 201(b)(2)(B).

18

## COUNT SIX

Between in or about October 2005 and in or about January 2007, in the Northern District of Florida and elsewhere, the defendant,

### GEORGE GUYTON CANNADY,

did knowingly and willfully steal and convert to his own use, money and property of the United States, that is, thirty-three thousand three hundred and seventy-five dollars ($33,375.00), which was money provided by the USAF for services for the USAF activity, but not actually spent on the services as required.

In violation of Title 18, United States Code, Section 641.

## COUNT SEVEN

On or about September 1, 2006, in the Northern District of Florida and elsewhere, the defendants,

### JOHN NORMAN SIMS
### and
### GEORGE GUYTON CANNADY,

did knowingly and willfully steal and convert to their own use, money and property of the United States, that is, fifty thousand dollars ($50,000.00), which was money rebated to the government relating to the USAF activity.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT EIGHT

On or about May 7, 2007, in the Northern District of Florida and elsewhere, the defendants,

19

## JOHN NORMAN SIMS
### and
## GEORGE GUYTON CANNADY,

did knowingly and willfully steal and convert to their own use, money and property of the

United States, that is, fifty thousand dollars ($50,000.00), which was money rebated to

the government relating to the USAF activity.

In violation of Title 18, United States Code, Sections 641 and 2.

### COUNT NINE

On or about May 2, 2008, in the Northern District of Florida and elsewhere, the

defendants,

## JOHN NORMAN SIMS
### and
## GEORGE GUYTON CANNADY,

did knowingly and willfully steal and convert to their own use, money and property of the

United States, that is, fifty thousand dollars ($50,000.00), which was money rebated to

the government relating to the USAF activity.

In violation of Title 18, United States Code, Sections 641 and 2.

### COUNT TEN

On or about May 18, 2009, in the Northern District of Florida and elsewhere, the

defendants,

## JOHN NORMAN SIMS
### and
## GEORGE GUYTON CANNADY,

did knowingly and willfully steal and convert to their own use, money and property of the

United States, that is, fifty thousand dollars ($50,000.00), which was money rebated to

20

the government relating to the USAF activity.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT ELEVEN

On or about May 14, 2010, in the Northern District of Florida and elsewhere, the defendants,

### JOHN NORMAN SIMS
### and
### GEORGE GUYTON CANNADY,

did knowingly and willfully steal and convert to their own use, money and property of the United States, that is, fifty thousand dollars ($50,000.00), which was money rebated to the government relating to the USAF activity.

In violation of Title 18, United States Code, Sections 641 and 2.

## COUNT TWELVE

On or about April 18, 2007, in the Northern District of Florida and elsewhere, the defendants,

### JOHN NORMAN SIMS,
### GEORGE GUYTON CANNADY,
### and
### RONALD BENTON POWERS,

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment

21

needed by the USAF for the USAF activity, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

## COUNT THIRTEEN

On or about May 4, 2007, in the Northern District of Florida and elsewhere, the defendants,

### JOHN NORMAN SIMS,
### GEORGE GUYTON CANNADY,
### and
### RONALD BENTON POWERS,

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment needed by the USAF for the USAF activity, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

22

## COUNT FOURTEEN

On or about May 10, 2007, in the Northern District of Florida and elsewhere, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment needed by the USAF for the USAF activity, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

## COUNT FIFTEEN

On or about June 18, 2007, in the Northern District of Florida and elsewhere, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

23

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment needed by the USAF for the USAF activity, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

### COUNT SIXTEEN

On or about August 30, 2007, in the Northern District of Florida and elsewhere, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment needed by the USAF for the USAF activity, for the purpose of exchanging the

24

information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

### COUNT SEVENTEEN

On or about February 5, 2008, in the Northern District of Florida and elsewhere, the defendants,

### JOHN NORMAN SIMS,
### GEORGE GUYTON CANNADY,
### and
### RONALD BENTON POWERS,

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment needed by the USAF for the USAF activity, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

25

## COUNT EIGHTEEN

On or about March 30, 2008, in the Northern District of Florida and elsewhere, the defendants,

### JOHN NORMAN SIMS,
### GEORGE GUYTON CANNADY,
### and
### RONALD BENTON POWERS,

did knowingly disclose and obtain contractor bid and proposal information and source selection information before the award of a federal agency procurement contract to which the information relates, in that defendant **JOHN NORMAN SIMS** disclosed, and defendants **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** obtained, acquisition requirements and pricing data relating to items and equipment needed by the USAF for the USAF activity, for the purpose of exchanging the information for anything of value and obtaining and giving anyone a competitive advantage in the award of a federal agency procurement contract.

In violation of Title 41, United States Code, Section 423, and Title 18, United States Code, Section 2.

### COUNTS NINETEEN THROUGH TWENTY-THREE

#### A. INTRODUCTION

The allegations of Count One, paragraphs A1-A7, are hereby realleged and incorporated by reference as if fully set forth herein.

26

## B. THE SCHEME

On or about the dates listed below, in the Northern District of Florida and elsewhere, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

did knowingly and willfully devise and intend to devise a scheme to defraud and deprive the citizens of the United States and the USAF of their right to the honest and faithful services of defendant **JOHN NORMAN SIMS**, a public official, through bribery and kickbacks, and the concealment of material information, and for the purpose of executing such scheme, and attempting to do so, did knowingly cause mail matter to be sent and delivered by the United States Postal Service and by a private and commercial interstate carrier.

## C. MANNER AND MEANS

The allegations of Count One, paragraphs C1-C16, are hereby realleged and incorporated by reference as if fully set forth herein.

17.     It was further part of the scheme that defendant **JOHN NORMAN SIMS**, a public official, would secretly use his official position to enrich himself by soliciting and accepting gifts, payments, and other things of value from defendant **GEORGE GUYTON CANNADY**, with intent to influence **JOHN NORMAN SIMS** to commit, aid in committing, and to collude, and allow a fraud on the United States, and for **GEORGE GUYTON CANNADY** and **RONALD BENTON POWERS** to enrich

27

themselves by secretly obtaining the awarding of USAF contracts relating to a USAF activity through corrupt means.

## D. EXECUTION OF THE SCHEME

On or about the dates described below, in the Northern District of Florida and elsewhere, the defendants, for the purpose of executing the above-described scheme to defraud and deprive, for the purpose of executing the scheme to defraud, did knowingly cause the following mail matter to be sent and delivered by the United States Postal Service and private and commercial interstate carriers:

| Count | Date | Defendants | Mailing |
|-------|------|-----------|---------|
| **NINETEEN** | 12/19/05 | **JOHN NORMAN SIMS** <br> **GEORGE GUYTON CANNADY** | $2,000.00 check |
| **TWENTY** | 5/5/06 | **JOHN NORMAN SIMS** <br> **GEORGE GUYTON CANNADY** | $26,230.50 check |
| **TWENTY-ONE** | 9/15/06 | **JOHN NORMAN SIMS** <br> **GEORGE GUYTON CANNADY** | $4,500.00 check |
| **TWENTY-TWO** | 3/27/07 | **JOHN NORMAN SIMS** <br> **GEORGE GUYTON CANNADY** | $4,000.00 check |
| **TWENTY-THREE** | 12/26/07 | **JOHN NORMAN SIMS** <br> **GEORGE GUYTON CANNADY** | $2,493.40 check |

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

### COUNT TWENTY-FOUR

Between in or about December 2005 and in or about May 2009, in the Northern District of Florida and elsewhere, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

did knowingly combine, conspire, confederate, and agree with other persons to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, that is, the interstate transfer of monetary instruments in the form of United States currency between financial institutions, which funds were in fact derived from a specified unlawful activity, namely, bribery, mail fraud, and theft of government funds, in violation of Title 18, United States Code, Sections 201, 1343, and 641, with the intent to promote the carrying on of these specified unlawful activities as charged in this Indictment and to conceal and disguise the nature, location, source, ownership, and control of the proceeds of these specified unlawful activities as charged in this Indictment, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

### COUNT TWENTY-FIVE

On or about July 13, 2009, in the Northern District of Florida and elsewhere, the defendant,

### JOHN NORMAN SIMS,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Air Force Office of Special Investigations, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated that he had no financial interest with George Guyton Cannady and Ronald Benton Powers with respect to USAF contracts obtained by Cannady and Powers relating to the USAF activity and that the defendant was not affiliated with any company.

29

In violation of Title 18, United States Code, Section 1001.

## COUNT TWENTY-SIX

On or about July 30, 2009, in the Northern District of Florida and elsewhere, the defendant,

## GEORGE GUYTON CANNADY,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Air Force Office of Special Investigations, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated that he never made any money from the contract information relating to the USAF activity that he received from John Norman Sims and which the defendant forwarded to Ronald Benton Powers.

In violation of Title 18, United States Code, Section 1001.

## COUNT TWENTY-SEVEN

On or about January 20, 2010, in the Northern District of Florida and elsewhere, the defendant,

## RONALD BENTON POWERS,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the Air Force Office of Special Investigations, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated that Company A was never going to be operated for profit and that he had no specific information why John Norman Sims owned shares in Company A.

30

In violation of Title 18, United States Code, Section 1001.

## COUNT TWENTY-EIGHT

On or about March 26, 2010, in the Northern District of Florida and elsewhere, the defendant,

## RONALD BENTON POWERS,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the USAF, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated in an affidavit that he, John Norman Sims, and George Guyton Cannady entered a share subscription agreement for Company A for the purpose of conducting a USAF activity, and that the share subscription agreement was dissolved within three months by the defendants due to the completion of a project for a USAF activity.

In violation of Title 18, United States Code, Section 1001.

## COUNT TWENTY-NINE

On or about March 29, 2010, in the Northern District of Florida and elsewhere, the defendant,

## GEORGE GUYTON CANNADY,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the USAF, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated in an affidavit that he, John Norman Sims, and Ronald Benton Powers entered a share subscription agreement for Company A for the purpose of conducting a USAF activity,

and that the share subscription agreement was dissolved within three months by the defendants due to the completion of a project for a USAF activity.

In violation of Title 18, United States Code, Section 1001.

### COUNT THIRTY

On or about April 26, 2010, in the Northern District of Florida and elsewhere, the defendant,

### JOHN NORMAN SIMS,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the USAF, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated in written testimony that he, George Guyton Cannady, and Ronald Benton Powers entered a share subscription agreement for Company A for the purpose of conducting a USAF activity, and that the share subscription agreement was dissolved within three months by the defendants due to the completion of a project for a USAF activity.

In violation of Title 18, United States Code, Section 1001.

### COUNT THIRTY-ONE

On or about June 2, 2010, in the Northern District of Florida and elsewhere, the defendant,

### RONALD BENTON POWERS,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the USAF, did knowingly and willfully make, and cause to be made, a false, fictitious, and fraudulent material statement and representation, in that the

32

defendant falsely stated in a "Memorandum" in response to a Notice of Proposed Debarment issued by the USAF that:

    a.    he did not meet with John Norman Sims unless the USAF Contracting Official Technical Representative was present;

    b.    he was not a participant in a concerted effort to navigate and circumvent acquisition and procurement integrity requirements; and

    c.    he had no knowledge of, and did not participate in, any activity that knowingly provided him with a competitive advantage.

In violation of Title 18, United States Code, Sections 1001 and 2.

## COUNT THIRTY-TWO

On or about June 4, 2010, in the Northern District of Florida and elsewhere, the defendant,

## JOHN NORMAN SIMS,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the USAF, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated in response to a Notice of Proposed Debarment issued by the USAF that he had acted with respect to the USAF activity at all times "...not for personal gain..." and that he had no personal ties to George Guyton Cannady and Ronald Benton Powers.

In violation of Title 18, United States Code, Section 1001.

33

### COUNT THIRTY-THREE

On or about June 10, 2010, in the Northern District of Florida and elsewhere, the defendant,

### GEORGE GUYTON CANNADY,

in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the USAF, did knowingly and willfully make a false, fictitious, and fraudulent material statement and representation, in that the defendant falsely stated in response to a Notice of Proposed Debarment issued by the USAF that he had not conspired to commit fraud or violate the Procurement Integrity Act.

In violation of Title 18, United States Code, Section 1001.

### COUNT THIRTY-FOUR

Between on or about August 6, 2008, and on or about March 24, 2012, in the Northern District of Florida and elsewhere, the defendant,

### JOHN NORMAN SIMS,

did knowingly have unauthorized possession of and control over documents and computer files relating to the national defense, which documents and computer files **JOHN NORMAN SIMS** did willfully retain and fail to deliver to an officer and employee of the United States entitled to receive the information.

In violation of Title 18, United States Code, Section 793(e).

### CRIMINAL FORFEITURE

The allegations contained in Counts One through Eleven and Nineteen through Twenty-Four of this Indictment are hereby realleged and incorporated by reference for the

34

the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c).

From their engagement in any or all of the violations alleged in Counts One through Eleven and Nineteen through Twenty-Four of this Indictment, the defendants,

**JOHN NORMAN SIMS,**
**GEORGE GUYTON CANNADY,**
**and**
**RONALD BENTON POWERS,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461(c), any and all of the defendants' right, title, and interest in any property, real and personal, constituting and derived from proceeds traceable to such offenses, including:

the real property located at 225 Kings Ridge Court, Southern Pines, North Carolina described as being all of Lot 1509, The Mid South Club, as shown on a map entitled "Subdivision Map of Section 15, The Mid South Club for Plantation Investors, LLC, McNeills, Township, Moore County, North Carolina", dated April 2005, and recorded in Plat Cabinet 12, Slide 529, Moore County Registry

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendants:

    i.      cannot be located upon the exercise of due diligence;

    ii.     has been transferred, sold to, or deposited with a third party;

    iii.    has been placed beyond the jurisdiction of this Court;

    iv.    has been substantially diminished in value; or

    v.     has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(b)(1), Title 28, United States Code, Section 2461(c), and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property.

A TRUE BILL:

FOREPERSON

DATE  July 23, 2013

PAMELA C. MARSH
United States Attorney

STEPHEN M. KUNZ
Assistant United States Attorney

36